2005 UT App 169

**YOUNG ELECTRIC SIGN COMPANY, INC., a Utah corporation, Plaintiff and Appellant,**

v.

**STATE of Utah, by and through the UTAH DEPARTMENT OF TRANSPORTATION, Defendant and Appellee.**

No. 20040265–CA.

Court of Appeals of Utah.

April 14, 2005.

Rehearing Denied May 4, 2005.

Heidi E. Leithead, Parr Waddoups Brown Gee & Loveless, Salt Lake City, for Appellant.

Mark L. Shurtleff, atty. gen., and Mark E. Burns, asst. atty. gen., Salt Lake City, for Appellee.

Before BILLINGS, P.J., BENCH, Associate P.J., and JACKSON, J.

## OPINION

BILLINGS, Presiding Judge:

¶ 1 Plaintiff Young Electric Sign Company (Young) appeals the trial court's order ·denying its motion for summary judgment and granting the Utah Department of Transportation's (UDOT) cross-motion for summary judgment. Specifically, Young argues that the trial court erred by upholding UDOT's denial of Young's application to erect an outdoor advertising sign. We reverse.

## BACKGROUND

¶ 2 In 1978, Young erected an outdoor advertising sign on premises leased from the owner of real property located in Clearfield, Utah, adjacent to Interstate 15 ·(I–15). Sometime thereafter, UDOT constructed a freeway interchange nearby to allow traffic on Antelope Drive to enter and exit I–15 north of Antelope Drive.

¶ 3 In 2002, the property owner informed Young that it needed to move the sign to the north end of the property in order to accommodate development plans for the property. Young removed the original sign and submitted an application to UDOT to locate a new sign further north on the east side of I–15, north of Antelope Drive. After reviewing the application, UDOT concluded that the proposed sign location was within 500 feet of the interchange in violation of Utah Code section 72–7–505(3)(c)(i)(A). *See* Utah Code Ann. § 72–7–505(3)(c)(i)(A) (Supp.2004). In particular, UDOT found that the proposed sign location is 108 feet from the "point of the . . . ending of pavement widening at the . . . entrance to the main-traveled way." *Id.* Accordingly, UDOT denied Young's permit application.

¶ 4 Pursuant to Utah Code section 72–7–508(4), Young filed a complaint in Second District Court seeking de novo judicial review of UDOT's decision. *See id.* § 72–7–508(4) (Supp.2004). On cross-motions for summary judgment, the district court upheld UDOT's decision. Young appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 5 Young argues that, in its ruling, which granted UDOT's motion for summary judgment and· denied Young's motion for summary judgment, the trial court erroneously interpreted various provisions in the Utah Outdoor Advertising Act (the Act). *See id.* §§ 72–7–501 to –516 (2001 & Supp.2004). "We review questions of statutory interpretation for correctness, affording no deference to the district court's legal conclusions." *R.A. McKell Excavating, Inc. v. Wells Fargo Bank, N.A.,* 2004 UT 48,¶ 7, 100 P.3d 1159. Furthermore, "[i]n the context of a summary judgment motion, we likewise employ a correctness standard and 'view the facts and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party.'" *Id.* (quoting *Hermansen v. Tasulis,* 2002 UT 52,¶ 10, 48 P.3d 235).

## ANALYSIS

¶ 6 The Act prohibits outdoor advertising signs within 500 feet of an interchange. *See* Utah Code Ann. § 72–7–505(3)(c)(i)(A). The Act specifically provides, in relevant part, that

> signs may not be located on an ·interstate highway or limited access highway on the primary system within 500 feet of an interchange . . . measured along the interstate highway or freeway from the sign to the nearest point of the beginning or ending of pavement widening at the exit from or entrance to the main-traveled way.

*Id.* The Act defines "[i]nterchange" to "mean[ ] those areas and their· approaches where traffic is channeled off or onto an interstate route, excluding the deceleration lanes, acceleration lanes, or feeder systems, from or to another federal, state, county, city, or other route." *Id.* § 72–7–502(9). In addition, the Act defines the "[p]oint of widening" as "the point of the gore or the point where the intersecting lane begins to parallel the other lanes of traffic, but the point of widening may never be greater than 2,640 feet from the center line of the intersecting highway of the interchange." *Id.* § 72–7–502(19).

¶7 UDOT argues that the "point of widening" defined in section 72–7–502(19) is not synonymous with the "point of the beginning or ending of pavement widening" as used in section 72–7–505(3)(c)(i)(A). *Id.* §§ 72–7–502(19), –505(3)(c)(i)(A). However, this interpretation renders the definition in section 72–7–502(19) meaningless. When construing statutes, we assume that the legislature used each term in the statute or its amendments advisedly; "thus the statutory words are read literally, unless such a reading is unreasonably confused or inoperable." *Johnson v. Redevelopment Agency,* 913 P.2d 723, 727 (Utah 1995) (quotations and citation omitted). Because the exact phrase "point of widening" is not used anywhere in the Utah Code or the Utah Administrative Code, and variations of the phrase "point of pavement widening" are used in both the Utah Code[1] and the Utah Administrative Code,[2] we interpret the phrases as synonymous.

¶8 While the district court noted the applicability of section 72–7–502(19), it failed to properly apply it. In the court's summary judgement ruling, it stated that under Utah Code section 72–7–502(19), the "point of widening" is defined as "either (1) 'the point of the gore' in the case where there is no acceleration lane, or (2) 'the point where the intersecting lane begins to parallel the other lanes of traffic' where there is an acceleration lane that does run parallel to the main-trav-

eled way." (Footnotes omitted) (quoting Utah Code Ann. § 72–7–502(19)).

¶9 We agree with the district court that in places where there is no acceleration lane and the interchange on-ramp immediately "dies into the freeway," the "point of widening" occurs at the "point of the gore."[3] In other words, the point of widening is where the on-ramp lane physically merges into the main-traveled way. We also agree that in places where there exists an acceleration lane, "the point where the intersecting lane begins to parallel the other lanes of traffic" constitutes the "point of widening." Utah Code Ann. § 72–7–502(19). However, because by definition, "the point of widening may never be greater than 2,640 feet from the center line of the intersecting highway of the interchange," *id.,* the district court erred by ruling that the point of widening occurs 2,937 feet from the center line of Antelope Drive.[4]

¶10 UDOT argues, and the district court apparently concluded, that there is no acceleration lane at this location and thus the point of the gore, or the point of widening, occurs when the lane proceeding northbound from Antelope Drive completely merges with I–15. Young contends that an acceleration lane does exist at this location and thus the point of widening occurs when the lane from Antelope Drive begins to parallel the other lanes of I–15. Accordingly, we must deter-

1. *See* Utah Code Ann. § 72–7–505(3)(c)(i)(A) (Supp.2004) (stating that the placement of advertising signs are to be "measured along the interstate highway or freeway from the sign to the nearest *point of the beginning or ending of pavement widening* at the exit from or entrance to the main-traveled way") (emphasis added); *id.* § 72–7–505(3)(c)(ii) (same).

2. *See* Utah Admin. Code R933–2–12 (using phrase "nearest point of pavement widening"); *id.* R933–2–13 (same); *id.* R933–2–3 (using the phrase "nearest point of the beginning or ending of pavement widening"); *id.* R933–5–2 (same).

3. Black's Law Dictionary defines "gore" as either (1) "[a] small, narrow slip of land" or (2) "[a] small (often triangular) piece of land, such as may be left between surveys that do not close." Black's Law Dictionary 703 (7th ed.1999).

4. UDOT claims that our enforcement of the 2,640-foot limit, *see* Utah Code Ann. § 72–7–

502(19) (Supp.2004), is contrary to the Utah–Federal Agreement entered into between the governor of Utah and the secretary of the United States Department of Transportation's Federal Highway Administrator on January 18, 1968, pursuant to the Highway Beautification Act of 1965. *See* 23 U.S.C. § 131 (2005); Utah Admin. Code R933–5–2; *see also* Utah Code Ann. §§ 72–7–501 to –516. We disagree. The core confusion rather stems from where the analysis of section 72–7–505(3)(c)(i)(A) begins. *See* Utah Code Ann. § 72–7–505(3)(c)(1)(A). UDOT begins the analysis at the sign and then goes counter to traffic flow to find an "ending of pavement widening." *Id.* We conclude that this defeats the purpose of the Act, which is to protect the 500-foot area around an interchange from advertising signs. We think Young's analysis, which begins the application of the various statutory definitions from the interchange at issue, better accomplishes the purpose of the Act.

mine whether an acceleration lane exists in this case.

¶ 11 The Utah Code does not define "acceleration lane." However, the Utah Administrative Code defines "acceleration and deceleration lanes" as

> speed change lanes created for the purpose of enabling a vehicle to increase or decrease its speed to merge into, or out of, traffic on the main-traveled way. As used in the Act, an acceleration or deceleration lane begins and ends at a point no closer than 500 feet from the nearest point of the beginning or ending of pavement widening at the exit from or entrance to the main-traveled way. On-ramps and off-ramps are part of the interchange and shall not be considered an acceleration or deceleration lane under the Act or these rules.

Utah Admin. Code R933–2–3. Thus, an acceleration lane is a lane constructed for the purpose of allowing a vehicle to increase its speed to equal that of the traffic on the main-traveled way.

¶ 12 UDOT would like us to assume that acceleration and deceleration lanes occur only when there is a lane that travels from an on-ramp to the next off-ramp without ever merging into traffic on the main-traveled way. However, in the traffic rules and regulations chapter of the Utah Code, the legislature has defined this type of lane as an "auxiliary lane" not as an "acceleration or deceleration lane." Utah Code Ann. § 41–6–53.5(1)(b) (Supp.2004) (stating that a "general purpose lane" does not include an "auxiliary lane that begins as a freeway on-ramp and ends as part of the next freeway off-ramp"). Further, the Act also distinguishes between "auxiliary lanes" and "acceleration lanes [and] deceleration lanes." *Id.* § 72–7–502(12) (defining "[m]ain-traveled way" as "the through traffic lanes, including auxiliary lanes, acceleration lanes, deceleration lanes, and feeder systems, exclusive of frontage roads and ramps"). Thus, the Act does not support UDOT's interpretation. Therefore, because in this case there exists a lane that

meets the northbound lanes of I–15 and then continues on for 1,738 feet before finally merging into the outside lane of I–15, its purpose must be to allow vehicles to increase their speed to merge with I–15 traffic. Accordingly, we hold that an acceleration lane exists at this location.[5]

¶ 13 The acceleration lane in this case begins at the point of widening, or the point where the Antelope Drive on-ramp begins to parallel I–15, and extends 500 feet. *See* Utah Admin. Code R933–2–3 ("As used in the Act, an acceleration or deceleration lane begins and ends at a point no closer than 500 feet from the nearest point of the beginning or ending of pavement widening at the exit from or entrance to the main-traveled way."). Because an acceleration or deceleration lane is not, by definition, considered a part of the interchange, *see* Utah Code Ann. § 72–7–502(9) (defining interchange as "those areas and approaches where traffic is channeled off or onto an interstate route, *excluding the deceleration lanes, acceleration lanes, or feeder systems,* from or to another . . . route" (emphasis added)), in this case the Act prohibits advertising signs within 500 feet from the point of widening. *See id.* § 72–7–505(3)(c)(i)(A). Accordingly, Young's proposed sign location is permissible under the Act as it is 846 feet beyond this point.

## CONCLUSION

¶ 14 We hold that the district court erred by granting summary judgment to UDOT and denying Young's motion for summary judgment. Accordingly, we reverse.

¶ 15 WE CONCUR: RUSSELL W. BENCH, Associate Presiding Judge and NORMAN H. JACKSON, Judge.

---

5. We also note that there are some locations where a freeway on-ramp does not convert into an acceleration lane. In these situations, the on-ramp immediately merges into the other lanes of traffic and the point of widening occurs at the "point of the gore." Utah Code Ann. § 72–7–502(19) (Supp.2004). That, however, is not the situation in this case as there exists an acceleration lane as defined by the Utah Administrative Code. *See* Utah Admin. Code R933–2–3.